## J. B. SANDERS *v.* McALISTER BROS. & CO.

### [57 South. 801.]

1. BILLS AND NOTES. *Assignee of bona fide purchaser. Rights.*

Where a party executed his note to a savings bank for the purchase of a certificate of deposit, for an equal amount, drawing a higher rate of interest, and the note was deposited by the savings bank with another bank as security for a debt and the latter bank took it before maturity and without notice of any defense thereto; and after the note matured and the savings bank failed, the other bank attempted to collect the note and there was no notice of a set off made until the other bank sold the note at public auction to plaintiff after maturity, at which sale the maker of the note gave notice of his alleged right to set off his certificate of deposit. *Held,* that plaintiff having acquired the note from the bank which was a holder in good faith, was himself a *bona fide* holder for value, and that the certificate of deposit was, therefore, not available as a set off as against plaintiff's rights.

2. SAME.

> If a person give his note for stock in a corporation and the corporation proves a failure, the validity of the note is not affected thereby.

APPEAL from the circuit court of Tippah county.
HON. W. A. ROANE, Judge.

Suit by J. B. Sanders against McAlister Bros. & Co. From a judgment for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Sharp & McIntyre & T. E. Pegram,* for appellant.

Fraud is never presumed and the burden of proving it rests upon him who asserts it is so well settled that argument is unnecessary. 20 Cyc. 108, 109; Ency. of Evi., Vol. 6-8; *Archer v. Helm,* 70 Miss. 874.

Before a jury could have rendered a verdict in favor of the appellees on the ground of fraud connected with the contract the proof that fraud was perpetrated would have had to be clear, strong and convincing. Wigmore on Evidence, Vol. 6, section 2498; *Chambers* v. *Meaut,* 66 M. 625; *Insurance Co.* v. *Farnworth,* 72 M. 555. The evidence in this case in support of the claim of fraud is not sufficient; it doesn't even reach to that height to excite a suspicion of fraud which would not be sufficient. *Shoe Co.* v. *Davis,* 75 M. 447.

It is a well settled proposition of law that before a trial court is warranted to take a case from the jury on the ground of fraud, that there must have been not only proof of fraud but clear, convincing and uncontradicted proof, such proof as would lead reasonable men to reach but one conclusion, namely that there was fraud practiced in the transaction. 20 Cyc. 123, and foot notes. Even though the alleged false representations may have been uncontradicted, the question as to whether those representations amounted to fraud was a question for the jury, and should have been so submitted. *Anderson* v. *Bennett,* at page 165.

If the court granted the peremptory instruction for the appellees, defendants in the court below, on the theory of fraudulent inducements to execute the note sued on, it is indeed strange, for the evidence not only fails to reach that degree which would have authorized the court to have taken such a course but there is a total lack of testimony, which would even indicate or hint at fraud. The contracts themselves contain no terms that indicate fraud. It is true that the certificate of deposit designates that interest will be paid thereon at the rate of twelve and one-half per cent. per annum and that the note only provides for eight per cent. per annum. This discrepancy in interest is accounted for, and consideration is given therefor, by reason of the fact that the appellees obligated themselves to their banking business with the Tishomingo Savings Institution. If it should be insisted that this discrepancy is indicative of fraud, did not the appellees have full notice thereof and were they not induced to sign the note on this very feature, doubtless?

The appellees offered no proof whatever that the Tishomingo Savings Institution had no authority to issue the certificate of deposit, nor does such lack of authority appear. It was not a stock certificate, but merely a certificate of deposit, with some additional stipulations, as shown on the face thereof, to strip it of its verbiage, it is simply a promise to pay the depositors the sum of five hundred dollars with interest thereon, with other conditions.

Under the appellees special plea of want of consideration the same burden rests to prove such want. The very certificate of deposit itself shows that there was a consideration for the note, because by this certificate, as before stated, the bank obligated itself to pay to the appellees the said sum of five hundred dollars. Notes exchanged one for the other form a sufficient consideration and it is true also of an exchange, check or bills or of

a note for a letter of credit. In such exchange each note or bill is a separate or independent contract. 7 Cyc. 710; Joyce's Defences to Commercial paper, Sec. 227. A certificate of deposit is a good consideration for a note discounted in a bank. *Miss. R. Co.* v. *Scott,* 7 Howard 79.

*Stephens & Kennedy,* for appellees.

The uncontradicted proof in the case is that the Tishomingo Savings Institution ordered these certificates issued and sold to an unsuspecting public at a time when said institution was in a most desperate strait and was using every possible means to secure money and avoid bankruptcy and ultimate ruin, having borrowed all the money it could borrow, it devised this far-fetched plan of getting the people's money without disclosing or even intimating its great financial press and need of funds, being thus embarrassed it not only borrowed all it could on paper bearing ten per cent. per annum, but it actually pretended that the certificate so issued and sold to appellees was represented by a deposit of an amount equal to the face value of said certificate, which was then in its bank to the credit of appellees, agreeing to carry appellees' paper at eight per cent. and at the same time pay them twelve and one-half per cent. on the certificate of deposit so issued and sold to these appellees, is fraud *per se* to say nothing of the shrewd and artful condition contained in the body of the certificate itself, *q. v. Houston's Case,* 56 So. 336; *Loan Co.,* 56 So. 293. We cannot escape the conclusion that the Tishomingo Savings Institution was insolvent, when it issued its certificate to appellees and took their note in payment of the same, never expected to do more than pledge the note and secure funds with which to satisfy its present impending demands. Having done this, no further consideration was ever given the matter, until it along with a number of other notes were sold in St.

Louis, when appellant became the buyer with actual notice of all these outstanding equities, etc., and just how appellant can claim to be an innocent purchaser for value under our anticommercial statute, I am unable to see or understand. Certainly the Tishomingo Savings Institution could not recover on this note if it had brought the suit instead of appellant. Can appellant occupy any better position in a suit to enforce payment of this note than said Institution would have occupied in a similar proceeding? Certainly not, etc.

Whether the consideration failed before or after the transfer, is quite immaterial under the facts in this particular case; one thing certain and that is, these appellees never received any thing for the note sued on and appellant knew this when he bought the note in St. Louis, etc. Of course, it was fraudulent for the Tishomingo Institution to issue certificates like the one issued to appellee, when it was in great financial stress and making every possible twist to save itself from impending ruin, and its paper from going to protest and default in payment, etc. The transaction stated in short is simply this: The Tishomingo Savings Institution agreed with certain parties that it would execute its note for five hundred dollars in favor of any one of them bearing interest at the rate of twelve and one-half per cent, per annum and give it in exchange for their note for like amount, bearing interest at the rate of eight per cent, per annum. The proposition is a query and the answer is a solution to this controversy; motive is the main spring of both thought and action, and just why a business institution, a bank if you please, would offer its paper in exchange for individual paper bearing a much less rate of interst, cannot be answered in truth except by stating that the institution must have been to all intents and purposes insolvent, and fixing to retire from business, etc. If it was at the time insolvent; if it was at the time unable to carry out its obligation with ap-

pellees and concealed this fact from them and induced them in the belief that it was solvent to execute the note sued on, then the note is uncollectible and no recovery can be had in this case. The judgment of the court below was eminently right and proper and should be affirmed here, etc.

MAYES, C. J., delivered the opinion of the court.

The record in this case shows that during the years 1906 and 1907 the Tishomingo Savings Institution was a banking corporation engaged in the banking business and having its domicile at Corinth, Miss. It also appears that this Institution had several branch banks, one of which was located at Ripley, known as the Ripley Branch of the Tishomingo Savings Institution. This Ripley Branch decided to issue scertificates of deposit to such persons as would take them, these certificates of deposit to bear interest at the rate of twelve and one-half per cent. per annum. The reason for issuing these certificates of deposit is stated in the record to have been for the purpose of inducing the persons to whom they were issued to conduct their banking business with the branch bank. The following is a copy of the certificate of deposit issued by this branch bank: ''No. G. $500.00. Ripley Branch of the Tishomingo Savings Institution, of Corinth, Miss. This certifies that McAlister Brothers & Co. has placed with the Rapley, Miss., Branch of the Tishomingo Savings Institution the sum of five hundred dollars to be used by the said Institution in its business. The said Tishomingo Savings Institution agrees to pay on said sum twelve and one-half per centum per annum, payable annually. This certificate shall be redeemable at its face value upon surrender to the said Institution at any time after five years from date, hereof, and the said Institution at its election may call in this certificate for payment at its face value and cancellation at any time after one year from the date hereof. This

certificate is nonnegotiable, and is transferable only on
the books of said Institution by the holder hereof, in
person or by attorney, upon the surrender of this cer-
tificate properly indorsed.  The holder hereof agrees
that he will not sell this certificate without first giving
the said Institution an option to purchase the same at its
face value within three months prior to the sale.  In testi-
mony whereof the said Tishomingo Savings Institution
has caused this certificate to be signed by its president,
and its corporate seal to be affixed, and to be attested by
the manager of its Ripley Branch, this the first day of
January, 1907.  Tishomingo Savings Institution, by J.
W. Taylor, President.  [Seal.]  Attest:  Jno. Y. Murry,
Jr., Manager of Ripley Branch.''

The legal principles controlling the decision in this
case are not affected by the reasons which controlled the
Branch Bank in issuing these certificates, and we shall
not attempt to pursue the reasons.  It is sufficient to
state that the Branch Bank issued the certificates, and
McAlister Bros. & Co. bought one, and paid for it with
their note at eight per cent. and due on January 1, 1908.
The note appears in full below.  In order to obtain one
of these certificates, it was not necessary that the party
purchasing it should actually place the money on deposit
with the bank, as the certificate stated that he had
done; but the bank undertook to exchange these certifi-
cates of deposit bearing twelve and one-half per cent.
interest for the note of a person for the same amount
as the certificate, the note to bear interest at eight per
cent.  In other words, the bank issued its certificate
for five hundred dollars, agreeing to pay the holder
twelve and one-half per cent. interest, and in exchange
therefor to take a note at eight per cent.  The note ex-
ecuted by McAlister Bros. & Co. was as follows:
''$500.00.  Corinth, Miss., January 1, 1907.  One year
after date, we, and each of us, promise to pay to the
Tishomingo Savings Institution, of Corinth, Miss., the

sum of five hundred dollars, with interest thereon, from date until paid, at the rate of 8% per annum, payable at the Tishomingo Savings Institution, Corinth, Mississippi, and said interest payable annually, and in case of failure to pay said interest at its maturity, then said interest is to bear interest at the rate of ten per cent, per annum from its maturity till paid, and in case this note is placed in an attorney's hands for collection, we agree to pay ten per cent. on the amount due, for attorney's fees. No. 2139. [Signed] McAlister Bros. & Co. Address, Ripley, Miss. Due, [Merchants]."

After the execution of this note, it was indorsed by the Tishomingo Savings Institution, by J. W. Taylor, President, and about March 5, 1907, was placed as collateral security with the National Bank of Commerce, of St. Louis, for a debt that was owing the National Bank of Commerce by the Tishomingo Savings Institution. Subsequently the National Bank of Commerce of St. Louis indorsed this note to the Ripley Bank or order for collection. The Tishomingo Savings Institution, prior to March 5, 1907, was indebted to the National Bank of Commerce of St. Louis in the sum of about forty thousand dollars, and about the 5th day of March, 1907, this note of McAlister Bros. & Co. was placed with the National Bank of Commerce as collateral to secure the payment of their indebtedness to this bank. It seems that the note in question was not originally placed as collateral security to the indebtedness due by the Tishomingo Savings Institution to the National Bank of Commerce, but after the making of the note by McAlister Bros. & Co., and delivering it to the Tishomingo Savings Institution, the McAlister Bros. & Co. note was substituted in lieu of some other collateral, which the Tishomingo Savings Institution had placed with the National Bank of Commerce, which had matured. The Tishomingo Savings Institution failed some time in December, 1907, and failed to pay its indebtedness to the

National Bank of Commerce, and this last bank was forced to undertake to realize on its securities. Before this note of McAlister Bros. & Co. became due, the note falling due January 1, 1908, the National Bank of Commerce, on November 26, 1907, wrote to McAlister Bros. & Co., calling their attention to the fact that they were the holders of the note for five hundred dollars, dated January 1, 1907, and maturing on January 4, 1908, and asking them to advise the bank what their intentions were with reference to the payment of this note. Again, on February 18, 1908, after the note became due, the National Bank of Commerce wrote to McAlister Bros. & Co., again calling their attention to the fact that the note was due, and asking for a remittance on same. Again, on March 10, 1908, they wrote, asking that the note be paid, and calling attention of McAlister Bros. & Co. to the fact that it was long past due. The record does not show that there was ever any reply made by McAlister Bros. & Co. to these letters. On November 26, 1908, the National Bank of Commerce sold this and several other notes held by it as collateral security at public auction, and this note was bought in by George L. Edwards for the account of the bank, and afterwards the National Bank of Commerce sold this note to one J. B. Sanders, the plaintiff in this suit. Sanders instituted a suit on this note as the legal holder thereof, commencing same by attachment.

It is needless for us to pursue the course of the proceedings, since there is no question involved as to that; but the defense made to the note by McAlister Bros. & Co. is that the note was procured to be executed by fraud, and is void for want of authority in the Ripley Branch Bank to issue the certificate; that at the time these certificates of deposit were issued the Branch Bank represented itself to be solvent, when, as a matter of fact, it was insolvent, and in great need of money, and was issuing these certificates to various parties for

the purpose of raising funds and saving itself from financial ruin; and that these facts were unknown to the makers of the note. At the time that this note was taken by the National Bank of Commerce as collateral, it is not shown that they had any knowledge of the alleged fraud; nor is it shown that McAlister Bros. & Co. ever stated to them, when written to about the note, that they had any such defense, or any defense. On the hearing the trial court gave a peremptory instruction to find for the defendants, and from this judgment an appeal is prosecuted.

This record, as a matter of fact, nowhere shows that, at the time of the issuance of these certificates of deposit, the bank issuing same was insolvent; but, on the contrary, the manager of the bank, Mr. Murry, testified that at the time these notes were taken and the certificates of deposit issued there was no question as to the solvency of the bank. Therefore, so far as this record shows, when this note was given and the certificate of deposit issued, the bank was entirely solvent, and its insolvency on the 10th day of December following grew out of the panic occurring about that time and the inability of the bank to realize on its securities. There was no want of consideration for the execution of this note, and no failure of consideration. The note was executed for the certificate of deposit, and the certificate of deposit was delivered. At the time of delivery it seems to have been a solvent certificate; but later the bank failed, and the certificate of deposit became valuless. But innocent holders of the note cannot be affected by this. If a person give his note for stock in a corporation, and the corporation prove a failure, the validity of the note is not affected thereby. The principle involed in this case is the same. McAlister Bros. & Co. got what they undertook to buy with this note. It is difficult for us to understand from this record on what theory the lower court could have granted a peremptory instruc-

tion to find for the defendants. It does appear that on November 26, 1908, at the time this note was sold, but long after it had become due, and long after the attention of McAlister Bros. & Co. had been called to the fact that the National Bank of Commerce held the note, Mr. Murry went to St. Louis at the time of the sale, and gave notice to all persons present at the sale that there was an offset outstanding against this note. But such was not a fact in law. Murry undertook to give notice that these notes were given for certificates of deposit, and that the bank had paid nothing on these certificates of deposit; but this notice was given, as stated before, in 1908 or 1909, and long after the National Bank of Commerce had become an innocent holder of same. When this notice was given, it appears that the plaintiff was present and afterwards bought the notes from the Bank of Commerce; but, of course, plaintiff is fully protected by the good faith of the National Bank of Commerce, the original holder of the note.

Section 4001 of the Code of 1906 is not involved in this litigation in any way. Under the proof in this record, McAlister Bros. & Co. had no defense to this suit on the note, either before or after notice of the assignment. Murry testifies that these certificates of deposit were issued in good faith and for the purpose of procuring the business of the persons to whom they were issued, that the certificates were issued at a time when the banks were solvent and to extend the business of them, and there is no testimony in contradiction of this.

*Reversed and remanded.*